UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America                        Case No. 3:17-cv-2027
*for the use and benefit of*
South Shore Electric, Inc., et al.,

      Plaintiffs

      v.                                                   MEMORANDUM OPINION

P and E Construction, LLC, et al.,

      Defendants

## I.     INTRODUCTION

Before me are the following fully briefed motions: (1) motion for summary judgment filed by Defendant Hartford Fire Insurance Co., (Doc. No. 13)[1]; (2) motion to dismiss for failure to state a claim filed by Defendants Eric and Pamela Hogan, (Doc. No. 14)[2]; (3) motion to dismiss for lack of personal jurisdiction filed by Defendants Eric and Pamela Hogan, (Doc. No. 15)[3]; and (4) motion for judgment on the pleadings regarding fraud filed by Defendants Eric and Pamela Hogan and Defendant P and E Construction, LLC ("P & E"), (Doc. No. 21).[4]

## II.     BACKGROUND

This Miller Act action stems from a government contract between P & E[5] and the United States, through the National Aeronautics and Space Administration, for work to be performed at the

---

[1] Plaintiffs filed a memorandum in opposition, (Doc. No. 16), and Hartford replied, (Doc. No. 20).
[2] Plaintiffs filed a memorandum in opposition. (Doc. No. 18). Defendants did not reply.
[3] Plaintiffs filed a memorandum in opposition, (Doc. No. 17), and Defendants replied, (Doc. No. 19).
[4] Plaintiffs filed a memorandum in opposition, (Doc. No. 22), and Defendants replied, (Doc. No. 23).
[5] The relationship between the Hogans and P & E is not explained within the complaint. But since Eric Hogan is signatory to the subcontract on behalf of P & E, it is assumed he had authority to bind P & E.

NASA Station in Sandusky, Ohio. To complete the work under this contract, P & E executed a Subcontract with Plaintiff South Shore Electric, Inc. ("SSE") to provide labor and material in connection with the electrical work for the project. (Doc. No. 1-1). SSE now claims that though it fully performed its obligations, P & E did not pay SSE for all materials and labor supplied. SSE also seeks relief from Hartford, as Surety of the "Miller Act" payment bond furnished to the United States, asserting Hartford is bound "to pay jointly and severally with P&E, as Principal, any and all unpaid amounts due to any person having a direct relationship with P&E or a subcontractor of P&E for furnishing labor, material or both in connection with the Project up to the stated penal sum of $4,551,700.00." (Doc. No. 5 at 3).

### III. RULE 12 MOTIONS

Pending are three Rule 12 motions filed by the Hogan Defendants. The first is a Rule 12(b)(6) motion for failure to state a claim, alleging neither Eric nor Pamela Hogan is personally liable for the contractual obligations of P & E. (Doc. No. 14). The second is a motion under Rule 12(b)(2) alleging the claims against the Hogans must be dismissed for lack of personal jurisdiction. (Doc. No. 15). The third is a Rule 12(c) motion asserting SSE[6] failed to state a claim of fraud.[7] (Doc. No. 21).

Before turning to the merits of any of these motions, I must recognize the blatant procedural errors made by the Hogans in their Rule 12(b) motions, which SSE assert as defenses to dismissal. First, the Hogans' Rule 12(b) motions were untimely filed, as they were filed after the answer. Fed. R. Civ. P. 12(b). Second, all Rule 12(b) defenses are to be filed in a single motion. Fed. R. Civ. P. 12(g)(2). Although neither of these motions were filed in compliance with the Rules of Civil

---

[6] Although the claims are asserted by both Plaintiffs, the United States for the use and benefit of SSE and SSE itself, for clarity and ease, I will refer to the two as one, "SSE.".
[7] SSE contends this motion should be denied on procedural grounds. (Doc. No. 22). But, as the Hogans correctly observe, Rule 12(g)(2) provides an exception the single Rule 12 motion requirement for a Rule 12(c) motion for failure to state a claim. (Doc. No. 23).

2

Procedural, I am mindful of the purpose of the Rules, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In this case, the Hogans asserted as affirmative defenses in the answer both failure to state a claim for which relief may be granted and lack of personal jurisdiction. (Doc. No. 8 at 5, 7). As such, I will consider the procedurally deficient Rule 12(b) motions as Rule 12(c) motions. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (3d ed. 2018) ("[F]ederal courts have allowed untimely motions if the defense has been previously included in the answer."); *see also, e.g., Ruhl v. Spear*, No. 2:11-cv-1026, 2012 WL 1537594 (S.D. Ohio Apr. 30, 2012) (as applied to personal jurisdiction); *Anderson v. Sullivan*, No. 03CV4064, 2005 WL 1123772 (E.D.N.Y. May 9, 2005) (same, but noting the defense was not waived since it was raised in the answer). Because SSE addressed the merits of these defenses in its memoranda in opposition, it is in no way prejudiced by my decision. (Doc. Nos. 17 & 18).

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007)). That is, while the *factual* allegations, taken as true, need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, the question is whether the plaintiff has stated sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In the Complaint, SSE specifically refers to the Hogans only three times, twice in numbered paragraphs in the body of the complaint, and once in the prayer for relief. They are as follows:

5. Eric Hogan and Paula [sic] Hogan are individuals residing in Georgia.

> 17. On August 23, 2016, Defendant Eric Hogan informed SSE "Like I said over the phone; I will pay you, it is just going to take some time. The NASA job kill (sic) my business with all the delays they caused us both."
>
> II. Against Defendants P&E, Eric Hogan and Pamela Hogan, for such compensatory and punitive damages as it proves at trial, which damages are currently in excess of $75,000.00, plus interest calculated at the rate of 18% per annum, its attorney's fees and cost of suit;

(Doc. No. 5). Additionally, the Subcontract[8] bears Pamela Hogan's signature as "witness" and Eric Hogan's signature on behalf on P & E. (Doc. No. 1-1 at 9).

## A.   PERSONAL JURISDICTION

"The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction 'over each defendant independently.'" *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel,* 445 F.3d 899, 904 (6th Cir.2006)) (additional internal citation and further citation omitted). "The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue (either pretrial or during trial)." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[T]he court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). "[C]ontroverting assertions of the party seeking dismissal" are not considered. *Id.* (quoting *Theurnissen*, 935 F.2d at 1459).

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883,

---

[8] The Subcontract was attached to the initial Complaint, (Doc. No. 1), as Exhibit A, and is incorporated by reference into the Second Amended Complaint. (Doc. No. 5 at 3).

888 (6th Cir. 2002). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Id.* at 712. Because the Ohio long-arm statute does not reach the limits of the Federal Due Process Clause, these are two separate inquiries. *Id.* Both must be satisfied to establish personal jurisdiction.

The Ohio long-arm statute provides, "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." O.R.C. § 2307.382(C). SSE claims the long-arm statute confers personal jurisdiction over the Hogans because the claims asserted arise from the following acts,

> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

O.R.C. § 2307.382(A); (Doc. No. 17 at 6).

Since Ohio's long-arm statute is more restrictive than the Due Process Clause, the "arising from" requirement demands the enumerated act be more than a "but for" cause of the cause of action. *See Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th Cir. 2006). Instead, personal jurisdiction will be conferred *only if* the defendant's conduct *in Ohio*, as enumerated by the long-arm statute, is the "proximate cause" of the cause of action. *Id.*

In this case, there are no facts alleged in the Complaint or SSE's affidavit which would allow me to conclude Pamela Hogan committed any of the enumerated acts giving rise to personal jurisdiction. Signing as a witness to the Subcontract alone does not demonstrate Pamela personally transacted *any* business in Ohio. The affiant's "belie[f] that the 'P' and the 'E' in P&E stands for 'Pamela' and 'Eric[,]'" demonstrates no such thing either. (Doc. No. 17-1). Because SSE cannot

5

establish Pamela Hogan's commission of an enumerated act was the "proximate cause" of any of the causes of action, SSE has failed to satisfy the burden of making a *prima facie* showing that the Ohio long-arm statute confers personal jurisdiction over Pamela Hogan in this action. Accordingly, "there is no need to perform a Due Process analysis." *Conn*, 667 F.3d at 713.

The same is not true for Eric Hogan. According to the affidavit filed by SSE, "Eric Hogan has at all relevant times been the owner and President of Defendant P and E Construction, LLC." (Doc. No. 17-1). P & E entered the original government contract to perform work at the Sandusky, Ohio NASA facility. (Doc. No. 5 at 2; Doc. No. 8 at 2). In turn, P & E entered a subcontract with SSE, an Ohio corporation, to perform electrical work on this Ohio project. (Doc. No. 5 at 3; Doc. No. 8 at 2).

Eric Hogan signed this Subcontract, as representative of P & E, for this work to be completed in Ohio. (Doc. No. 1-1). Thus, as a representative of P & E, Eric Hogan transacted business in Ohio. *See Brunner*, 441 F.3d at 465 ("Ohio courts interpret the 'transacting business' prong broadly.") (citing *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App.3d 634, 640 (Ohio Ct. App. 2005)). Further, because all causes of action asserted derive from the business relationship created by the Subcontract signed by Eric Hogan, I conclude a "proximate cause" relationship exists between Eric Hogan's enumerated act and SSE's causes of action. As such, the Ohio long-arm statute element is satisfied.

Turning to the Due Process Clause element, I must now determine whether Eric Hogan has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Exercise of personal jurisdiction will comport with the Due Process Clause when three elements are met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

6

must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (1968). "When the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) ("[F]airness is judged by whether the buyer (1) is an 'active' or 'passive' one, (2) could foresee a foreign suit, and (3) has physical contacts with the forum state.").

For the same facts listed above, I conclude Eric Hogan has purposely availed himself of the privilege of acting in Ohio through his work as the alleged owner and president of P & E. Further, because the causes of action asserted here "arise from" the Subcontract, which Eric Hogan signed for work to be performed in Ohio, the second element is met as well. Finally, since the first two elements are met and there is no reason for me to question the fairness of exercising personal jurisdiction, the third may be inferred. Therefore, SSE has satisfied its burden of establishing this court has personal jurisdiction over Eric Hogan here.

Thus, the Rule 12(b)(2) motion, treated as a Rule 12(c) motion, asserting lack of personal jurisdiction is granted as to Pamela Hogan and denied as to Eric. (Doc. No. 15).

**B.    PERSONAL LIABILITY**

Eric Hogan moves to dismiss all claims asserted against him in his personal capacity, alleging he cannot be personally liable for the contractual obligations of P & E. (Doc. No. 14). Apparently conceding the corporate veil may not be pierced here, SSE merely argues Hogan can be liable for the tort claims asserted against him, in his individual capacity. (Doc. No. 18). Even so, I will briefly address the merits of piercing the corporate veil here.

Under Ohio law, to pierce the corporate veil and hold individual shareholders personally liable, the plaintiff must demonstrate:

7

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Co., Inc.*, 67 Ohio St. 3d 274, 289 (1993); *see also Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 513 (2008) (reaffirming the *Belvedere* test and expanding the second prong to include "a similarly unlawful act" such as "abuse of the corporate form").

Because SSE asserts no facts in the Complaint alleging Eric Hogan had control over P & E, let alone control "so complete that the corporation has no separate mind," Eric Hogan cannot be held personally liable under the principle of piercing the corporate veil. Only the tort claims against Eric Hogan in his individual capacity remain. *See Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 914 (S.D. Ohio 2003) ("[C]orporate officers may be held liable for the torts they commit while acting within the scope of their employment.").

## C. FRAUD

Remaining Defendants Eric Hogan and P & E move for judgment on the pleadings on the fraud claim, arguing the tort claim derives from breach of the Subcontract. (Doc. No. 21). In response, SSE asserts the fraud claim is based not on breach of the contract alone, but on Eric Hogan's promise that P & E would pay SSE what was owed under the Subcontract in the future, when he had no intention of doing so. (Doc. No. 22). SSE alleges its reliance on this representation caused further injury because it refrained from filing an Affidavit of Claim to secure payment. (*Id.*).

To state a claim of fraud under Ohio law, SSE must show the following elements:

(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 23 Ohio St. 3d 69, 73 (1986) (further citation and internal quotation marks omitted). For purposes of fraud, the representation at issue must generally relate to a "past or existing fact," rather than a promise of future action. *See Mike McGarry & Sons, Inc. v. Constr. Res. One, LLC*, 2018-Ohio-528, 107 N.E.3d 91, 104 (Ohio Ct. App. 2018) (citing cases). But an exception to this rule exists when the promisor did not intend to keep the promise at the time it was made. *Id.* In this case, SSE alleges only that Eric Hogan made a vague promise of eventual payment that was not kept. (Doc. No. 5 at 4). There are no facts alleged to support a conclusion that Hogan made the promise knowing it would not be kept. Without more, SSE fails to "raise a right to relief above the speculative level," and judgment must be granted as a matter of law to Defendants on the claim of fraud alleged in Count VI. *See Twombly*, 550 U.S. at 555.

### IV. HARTFORD MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)). It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also*

9

*Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

Hartford claims it is entitled to summary judgment based upon SSE's failure to file suit within the statute of limitations proscribed by the Miller Act. (Doc. No. 13). The parties agree that a one-year statute of limitation exists. The dispute lies in the date of accrual, "the day on which the last of the labor was performed or material was supplied." 40 U.S.C. § 3133(b)(4).

To determine this date, the Sixth Circuit has adopted the bright-line "correction-or-repair versus original contract test." *United States v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 460 (6th Cir. 2000). This inquiry "requires the trier of fact to distinguish whether the work was performed as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection

of the project." *Id.* (internal quotation marks and ellipses omitted). "Neither repairs necessitated by work improperly performed by the contractor nor repairs necessitated by defective material supplied by a manufacturer qualify as 'labor performed' or 'material supplied.'" *Id.* at 462.

Hartford claims that work under the original contract was completed on May 24, 2016, and that the work SSE completed in October and November 2016 was done for the purpose of correcting defects or making repairs. (Doc. No. 13 at 6). In support, Hartford points to SSE's Pay Application, dated May 24, 2016, attached to the Complaint, to demonstrate the outstanding balance owed under the Subcontract. (Doc. No. 1-2). Hartford also sets forth as evidence SSE timesheets from October and November 2016, which were supplied to Hartford by SSE in the course of Hartford's investigation of the SSE claim in August 2017. (Doc. No. 13-1 at 1, 4-7).

### A. EVIDENTIARY AND DISCOVERY MATTERS

In response to Hartford's motion, SSE first challenges the authenticity of the evidence relied upon and moves for additional discovery under Rule 56(d).

#### 1. Authenticity

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One way of doing so is through "[t]estimony of a witness with knowledge." Fed. R. Evid. 901(b)(1).

This case is somewhat unusual in that SSE disputes the authenticity of their own records. Especially confusing is the challenge to the authenticity of the Pay Application, which SSE filed as an attachment to the Complaint. Essentially, in questioning the authenticity of this document, SSE challenges the veracity of its own certified filing. Such an accusation is generally reserved for a Rule 11 motion filed by an opponent, not as a haphazard attempt to exclude evidence. If SSE now has reason to believe the Pay Application contains false information, it should notify the court immediately so remedial action may be taken. Since SSE does not challenge the accuracy of the Pay

Application, I will assume that is not the case. And I deem the Pay Application to be admissible evidence here, sufficiently authenticated by the signature of SSE's attorney on the complaint which incorporated the document.

Regarding the timesheets, SSE contends they cannot be authenticated by the Hartford investigator because he has no personal knowledge of the work performed. (Doc. No. 16 at 5-6). While it is true that the affiant was not present for the work performed, he testified that he received the payroll records from SSE in the course of his investigation of SSE's claim. (Doc. No. 13-1 at 1). According to the investigator, the timesheets were provided "to show that work was performed in October and November of 2016". (*Id.*). SSE does not dispute the accuracy of these records nor does it make any allegation that it did not provide these records to Hartford for this purpose. Instead, like the Pay Application, SSE simply wishes to disavow its own records that no longer prove favorable. I simply will not allow it. Because there is no dispute as to the accuracy of these timesheets that SSE provided to Hartford to prove that which it is trying to prove now, I conclude the investigator's affidavit to be "sufficient evidence to support a finding" of authenticity.

## 2.    **Request for Additional Discovery**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may…allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). Generally, Rule 56(d) motions should be granted when the parties have not been given any opportunity for discovery. *CenTra v. Estrin*, 538 F.3d 402, 420-21 (6th Cir. 2008) (citing cases). But "Rule 56([d])[9] is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989)

---

[9] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note (2010); *see also CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 344 (6th Cir. 2011).

(quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). Instead, the nonmovant seeking an extension of discovery under Rule 56(d) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). "Bare allegations or vague assertions of the need for discovery are not enough." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

In this case, SSE filed two affidavits in support of the Rule 56(d) request. The first states, in relevant part,

> Plaintiffs should be permitted reasonable time to request documents from the relevant parties (NASA, P&E) related to the nature of the work performed by South Shore in October/November 2016 and to conduct Rule 30(b)(6) depositions of representatives of NASA and P&E on whether the work was within the scope of the Subcontract. This limited discovery bears directly on opposing the MSJ. By way of example, a representative of NASA could testify that South Shore never completed the scope of work required by the Subcontract and, therefore, the work done in 2016 was to meet contractual requirements.

(Doc. No. 16-1 at 3). The second,

> Jason Wynne, who was South Shore's Project Manager on the Project, is no longer with the company. He would be the management level person most familiar with the overall Project, including the issues raised in the Motion for Summary Judgment. One of the reasons South Shore needs discovery to oppose the Motion for Summary Judgment is because Mr. Wynne is no longer with the company.

(Doc. No. 16-2 at 2).

Lacking from each of these affidavits is an explanation as to why the evidence sought is unavailable to SSE.[10] Whether the work performed by SSE in October and November of 2016 was remedial or completed pursuant to the contract does not hinge on information in NASA or P & E's

---

[10] While I acknowledge that the second affidavit states that the project manager has left the company, the affidavit fails to "describe 'exactly how [SSE] expects [Wynne's testimony] would help [it] in opposing summary judgment.'" *Sandusky Wellness Ctr. v. Medco Health Solutions, Inc.*, 788 F.3d 218, 226 (6th Cir. 2015) (quoting *Summers*, 368 F.3d at 887). The vague allegation that Wynne was the management level official most familiar with the project does not indicate what information he could supply that is otherwise unavailable to SSE. Therefore, the affidavit is too vague to successfully support the motion. *See CenTra*, 538 F.3d at 420 (citing cases).

13

control. Instead, SSE presumably possesses the same or superior knowledge of the work performed in October and November 2016 as NASA and P & E through its own business records or by testimony of its employees who actually performed the work.[11]

In fact, it does. Hartford uses SSE's own records to support its motion for summary judgment. Because the information necessary to oppose summary judgment should be in SSE's control and SSE makes no attempt to explain why it is not, the Rule 56(d) motion must be denied. *See, e.g., Emmons*, 874 F.2d at 357 ("Given the nature of Appellant's allegations, however, we believe that his right to further discovery hinged not upon information in Appellees' control, but instead upon facts that, if they existed, should have been within Appellant's personal knowledge."); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 410 (6th Cir. 1998) (denying a Rule 56(d) motion because, among other reasons, the nonmovant "could have obtained at least some information…without relying on defendants for that information.").

**B.  ACCRUAL DATE**

Having resolved the evidentiary matters, I now consider whether the Miller Act claim was filed within the one-year statute of limitations. To do so, I must determine if a genuine issue of material fact remains as to whether the work completed by SSE in October and November 2016 was "performed as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *Int'l Fid. Ins. Co.*, 200 F.3d at 460 (internal quotation marks and ellipses omitted). As discussed above, in support of its argument that no such factual dispute remains, Hartford points to the Pay Application submitted by SSE to P & E dated May 24, 2016, as well as four SSE timesheets for work completed in October and November 2016.

---

[11] In the memorandum in opposition, SSE states "[t]he workers have not been deposed as to what work they did." (Doc. No. 16 at 7). But SSE provides no explanation as to why it was unable to obtain an affidavit from any of these workers with personal knowledge to oppose summary judgment until a deposition could be taken later in discovery. *See* Fed. R. Civ. P. 56(c)(4); *see also Redhawk Global, LLC v. World Projects Int'l*, No. 2:11-cv-666, 2012 WL 2018528, at *2 (S.D. Ohio June 5, 2012) ("[I]f the facts needed to oppose summary judgment are within the control of the party opposing the motion, then it should submit an affidavit(s) rather than seek additional discovery.").

14

The SSE Pay Application is nearly identical to the application at issue in *United States ex re. MLE Enterprises, Inc. v. Vanguard Contractors, LLC*, No. 5:11-cv-00027, 2013 WL 1947637, at *2 (W.D. Ky. May 9, 2013). The description below accurately describes both,

> The application for payment itemizes the specific tasks to be completed under the subcontract. Among other things, each item is assigned a "Scheduled Value" and a "Total Completed and Stored to Date" value. Subtracting the "Total Completed and Stored to Date" value from the "Scheduled Value" produces the "Balance to Finish" in Column H of the payment application. The "Balance to Finish" is a measure of the work yet to be performed...

*Id.* (internal citations to the record omitted); (Doc. No. 1-2 at 2). Further, in both, the "Balance to Finish" column "lists a $0.00 balance … for all work to be performed under the subcontract." *Id.* As in *MLE Enterprises*, "[t]his does not mean that [SSE] had been paid the full amount of the subcontract. Rather, it indicates that [SSE] completed all the labor and materials necessary to receive full payment." *Id.* Therefore, in accordance with my trial court colleague, I conclude the application for payment shows SSE had completed all "labor" and "materials" under the subcontract by May 24, 2016. *Id.*

As to the timesheets, SSE urges me to disregard the language used to describe the work, stating the "low-level" workers who authored the timesheets would not be able to distinguish work under the contract from remedial work. But such an argument ignores the Sixth Circuit instruction that it is the "nature of the work performed, not its cause" which governs this inquiry, and its refusal to "equate the term 'labor' to the term 'contractual duties.'"[12] *Int'l Fid. Ins. Co.*, 200 F.3d at 461-62. As such, regardless of the workers' knowledge of the contractual duties, they could accurately

---

[12] Based on the same reasoning, I reject SSE's contention that "labor" under the contract could be complete only upon "written acceptance by NASA" and the start of the guaranty period of the contract. (Doc. No. 16 at 7). *See, e.g., United States ex rel. PRN Assocs., Inc. v. K & S Enters., Inc.*, No. 1:04-cv-470, 2007 WL 925267, at * 4 (S.D. Ind. Mar. 27, 2007); *United States v. Hartford Accident & Indem. Co.*, No. 99-1308, 2000 WL 1072296 (D. Kan. July 14, 2000).

describe the work performed.¹³  Their descriptions, of course, must be viewed in the light most favorable to SSE.

The timesheets state the following:

(1) October 17, 2016: "Troubleshoot site lighting; Found ½ lights wouldn't come on. Trouble in Relay Board & a few lamps were out."; materials used consist of four "replacement lamps" and one "replacement ballast kit."

(2) October 18, 2016: "Continue of site lighting repair"; materials used consist of two "replacement lamps" and one "replacement ballast kit."

(3) October 20, 2016: "Met with Bright Focus Lighting Rep. to determine how to fix relay panel"; "Replacement board ordered."

(4) November 10, 2016: "Met with Ted Kemer to look at 'new' lights (site) that are out."

(Doc. No. 13-1 at 4-7).  These entries specify the work completed in October and November 2016, as well as the "replacement" materials used to do so.  That is, each details work performed to "repair," "fix," and "troubleshoot" lights and lamps that "wouldn't come on" or were "out" and "determine how to fix" the relay board which was having "trouble."  Plainly defined, these terms all indicate the work performed in October and November 2016 was completed to correct defects or make repairs.¹⁴  Absent from the timesheets is any vague or ambiguous language from which one could reasonably infer the work completed in October and November 2016 was anything but remedial.¹⁵  Thus, the timesheets lead to only one conclusion: work performed in October and November 2016 was not completed as part of the original contract, but for remedial purposes.

---

¹³ As discussed in footnote 6, that these workers have not been deposed is not a valid reason to ignore the language of the timesheets.  To oppose summary judgment, Rule 56(c)(4) requires only an affidavit or declaration setting out facts that would be admissible in evidence, not a deposition.  Because SSE does not allege it made any effort to acquire such an affidavit, I reject any allegation of hardship.
¹⁴ *See, e.g., MLE Enterprises*, 2013 WL 1947637, at *4 (concluding the work performed was remedial from two emails describing "adjustments," which are, by definition, "corrections" "to bring to a more satisfactory state").
¹⁵ *Cf. United States for Use & Benefit of Lee Brick Prods., Inc. v. White*, No. 3:13-cv-958, 2017 WL 1856177, at *5 (W.D. Ky. May 8, 2017) ("[V]iewing [the] invoice in the light most favorable to [the nonmovant], the Court is unwilling to infer from the invoice that 'cutting out beams & repair work'

Because there is no evidence to suggest any "labor" was performed after the Pay Application was submitted on May 24, 2016, Hartford has sufficiently proven that the Miller Act claim, filed on September 26, 2017, was untimely. As I discussed above, under the circumstances, Plaintiffs' failure to set forth *anything* to meaningfully oppose summary judgment or adequately justify such a shortcoming will not be awarded by delaying judgment.[16] *See Emmons*, 874 F.2d at 357 ("His refusal to divulge his knowledge to the district court justified the early entry of summary judgment here."). Therefore, summary judgment is awarded to Hartford.

## V.     CONCLUSION

For the reasons stated above, Pamela Hogan is dismissed from this action for lack of subject matter jurisdiction. Eric Hogan is granted judgment on the pleadings as to all claims asserted against him with the exception of the negligent misrepresentation claim, asserted as Count VII, for which dismissal was not sought. P & E is granted judgment on the pleadings as to the fraud claim, asserted as Count VI. Hartford is granted summary judgment as to the Miller Act claim. Because this was the only claim asserted against Hartford, it too is dismissed from this action.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

means …remedial work… It is unclear from the invoice whether 'cutting out beams' is a form of repair work, or what constituted the 'repair work' listed on the invoice.").

[16] SSE contends equitable estoppel or equitable tolling should apply here to extend the time to file. (Doc. No. 16 at 9 (quoting *United States for Use & Benefit of Humble Oil & Ref. Co. v. Fid. & Cas. Co. of N.Y.*, 402 F.2d 893 (4th Cir. 1968))). But as stated in *Humble Oil*, "[i]t is … necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice." 402 F.2d at 898 (quotation omitted). SSE fails to allege Hartford made any statement to SSE, let alone a misleading statement. Thus, there is no basis to apply equitable estoppel to extend the statute of limitations for the claim against Hartford.